FILED

2011 Mar-29  AM 08:07
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

YVONNE DAVIS-ROBINSON,    )
)
        Plaintiff      )
)
    vs.               )     Case No.  2:09-cv-00302-HGD
)
FIRST BANK and JARED KIRBY,  )
)
        Defendants    )

## MEMORANDUM OPINION

The above-entitled civil action is before the court on the motion for summary judgment filed by defendants.  (Doc. 28).  This matter is before the undersigned United States Magistrate Judge based on the consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73, Fed.R.Civ.P.

Plaintiff, Yvonne Davis-Robinson, filed this action against defendants First Bank and Jared Kirby.  She asserts causes of action for failure to honor a certificate of deposit (CD), breach of contract, unjust enrichment, conversion, fraud, negligent misrepresentation and fraudulent misrepresentation, and breach of fiduciary duty.

## SUMMARY JUDGMENT STANDARD

This matter is considered by the court pursuant to the provisions of Rule 56, Fed.R.Civ.P.  Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).  Thus, summary judgment is appropriate where the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  The substantive law governing the action determines whether an element is essential. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510.  A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

This circuit clearly holds that summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the non-moving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983); *see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512.  The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his or her favor.  *Id*. at 255, 106 S.Ct. at 2514, *citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970).  It is, therefore, under this standard that the court must determine whether the plaintiff can meet her burden of coming forward with sufficient evidence as to each material element of her claims sufficient to permit a reasonable jury to find in her favor.

## FACTUAL BACKGROUND

Defendant First Bank is a commercial bank with its principal place of business in Roanoke, Alabama.  Defendant Jared Kirby was President of First Bank between 2001 and 2006.  This case involves a loan that First Bank desired to make to Terry

Manufacturing Company (TMC) in October 2001 in the amount of $8.5 million (the "2001 loan"). TMC's principal owner was Roy Terry. Terry is not a party to this lawsuit. The 2001 loan was to be partially guaranteed by the U.S. Department of Agriculture.

In September 2001, plaintiff received an unsolicited phone call from Roy Terry in which he asked plaintiff to make two loans to him totaling $750,000. The first loan was to be in the amount of $425,000, which would be used to purchase a CD with First Bank. This loan was needed by First Bank as additional cash collateral for the 2001 loan so that the bank would not exceed its legal lending limit to TMC under applicable banking law. The second loan was to be in the amount of $325,000, which TMC needed for working capital due to a shortage of accounts receivable. (Doc. 30 at Ex. G, Plaintiff's Depo., at 44-45, 50-51).

On September 23 or 24, 2001, Terry called plaintiff a second time to discuss these loans. Kirby participated in this call. During the call, Terry and Kirby discussed a proposed written agreement that would set forth the terms of the loans from plaintiff and her husband to TMC for $425,000 and $325,000. During the call, Kirby vouched for Terry's trustworthiness and the financial stability of TMC. (*Id.* at 55, 58-59, 77). Plaintiff asserts that TMC was not actually financially stable and that defendants knew or should have known at that time that TMC and Terry had engaged

in certain fraudulent business practices and/or business practices that indicated pending insolvency.

Plaintiff received another call from Kirby and Terry on September 25, 2001, in which they told her it was critical that she immediately wire $425,000 to First Bank so that the partially guaranteed $8.5 million loan could go forward. (*Id.* at 52-55). As a result, plaintiff wired this money to defendant First Bank on September 25, 2001.  First Bank was allowed to use this money only if the loan closed within 14 days. (Doc. 33 at Ex. 1, Kirby Depo., at 141-42).

Sometime thereafter, Kirby received a letter from the U.S. Department of Agriculture stating that First Bank could not use the $425,000 as collateral for the 2001 loan, but could only use it as collateral for a pre-existing 1999 loan from First Bank to TMC in the amount of $10 million. (*Id.* at 184).  Because the loan did not close within 14 days, on October 22, 2001, plaintiff sent a letter to Kirby extending the time to use the funds as security for a "loan or loans" to TMC to 14 days from that date.  Although Kirby asserts that this new authorization gave him permission to use the money as security for the 1999 loan, no mention is made in plaintiff's letter dated October 22, 2001, of using the funds with regard to any other loan.  Kirby also states that he does not recall asking plaintiff if she would permit the use of these funds for that purpose. (*Id.* at 157, 183).

Plaintiff signed three pledge agreements with regard to the $425,000. The first two agreements clearly and legibly showed that plaintiff's money would be pledged as collateral for the $8.5 million loan. However, the third pledge agreement is virtually illegible. It is this agreement which purportedly pledged the $425,000 as collateral for the pre-existing 1999 $10 million loan. Plaintiff asked Kirby why the agreement had 1999 on it and was told not to worry about it because it was just language that he forgot to put in prior versions of the pledge agreement. (Doc. 30 at Ex. G, Plaintiff's Depo., at 263-64). Because this pledge agreement is so illegible, plaintiff asserts that she was not aware it referenced the prior loan to TMC for $10 million. (*Id.* at 268). Plaintiff asserts that this is fraud on the part of defendants and that the pledge agreement is void and unenforceable against plaintiff. *See Environmental Sys., Inc. v. Rexham Corp.*, 624 So.2d 1379, 1382 (Ala. 1993). Likewise, while this pledge agreement may be a defense against unjust enrichment, fraud in its procurement would negate that defense. Therefore, because there is a dispute about the facts surrounding the creation of and representations made to plaintiff about the agreements, and her understanding of the terms thereof, summary judgment is not warranted as to plaintiff's claims of breach of contract, fraud, negligent misrepresentation and fraudulent misrepresentation.

Plaintiff also asserts a conversion claim against defendant First Bank.  First Bank claims that it cannot be guilty of conversion because to be found liable for this offense, it would have had to convert the CD itself and not just the funds represented by the CD.  However, plaintiff alleges *both* that the CD was itself converted and that the funds it represented were converted.  As such, a claim for conversion is appropriate.  *See Bozeman v. Central Bank of the South*, 646 So.2d 601, 603 (Ala. 1994).

Likewise, defendants' claim that plaintiff's fraud, promissory fraud, negligent misrepresentation, fraudulent misrepresentation and breach of fiduciary duty claims are barred by the statute of limitations is without merit.  Plaintiff was not damaged by alleged actions of defendants until her CDs were confiscated and liquidated by the bank on May 30, 2006.  Because the suit was filed on May 2, 2008, it was filed within the applicable two-year statute of limitations for such tort claims.  Defendants' arguments to the contrary are without merit.

Likewise, while there is not usually a fiduciary relationship between a bank and its customer, such a relationship may arise under certain circumstances.  *See Bank of Red Bay v. King*, 482 So.2d 274, 285 (Ala. 1985) (fiduciary duty may arise when customer reposes trust in bank and relies on bank for financial advice, or in other special circumstances).  Plaintiff has alleged that Kirby personally vouched for

Terry's trustworthiness and the financial stability of TMC in order to obtain the funds from her to serve as collateral for the proposed loan to TMC. Therefore, plaintiff has presented a jury question as to whether such circumstances are present here.

With respect to the claim for failure to honor her demand for the full proceeds of the CD, defendants contend that the UCC (as codified at *Ala. Code* Title 7) does not create a cause of action for failure to honor a CD. Plaintiff made a demand for the principal and interest of the CD on May 2, 2006. First Bank liquidated the CD but seized the deposit amount (which it applied to TMC's 1999 loan) and returned only accumulated interest to plaintiff. Plaintiff asserts that a CD is a promissory note under *Ala. Code* § 7-3-104(j). Therefore, under *Ala. Code* § 7-3-412, as issuer of the note, First Bank was obligated to pay plaintiff the CD upon her demand. Defendants have made no reply to plaintiff's response. Therefore, summary judgment is not warranted as to this claim.

## CONCLUSION

Based on the foregoing, it is ORDERED that defendants' Motion for Summary judgment is due to be and hereby is DENIED because of the existence of genuine disputes as to material facts and because defendants have failed to show that they are entitled to judgment as a matter of law.

DONE this 28th day of March, 2011.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE