FILED
2012 Apr-11 PM 02:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

YVONNE DAVIS-ROBINSON,           )
                                 )
       Plaintiff                 )
                                 )
vs.                              )   Case No. 2:09-cv-00302-HGD
                                 )
FIRST BANK and JARED KIRBY,      )
                                 )
       Defendants                )

## AMENDED MEMORANDUM OPINION

The above-entitled civil action is before the court on the motion for summary judgment filed by defendants. (Doc. 28). This matter is before the undersigned United States Magistrate Judge based on the consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73, Fed.R.Civ.P.

In its earlier Memorandum Opinion (Doc. 47) and subsequent Order (Doc. 50) in this case, the Court initially declined to dismiss plaintiff's claim for damages as the result of the loss of $325,000 in money loaned to Roy Terry and Terry Manufacturing Companies (TMC) by plaintiff. This money was loaned by plaintiff directly to Terry and did not travel through First Bank of Roanoke. It was wired by plaintiff to the Bank of Wedowee. Defendants have asserted that the statute of limitations expired

on all claims asserted by plaintiff with regard to the $325,000 loan, prior to the May 2, 2008, filing date of this action, based on the fact that plaintiff filed a Proof of Claim in Terry's bankruptcy proceeding case in July 2003 and because she testified in her deposition that by July 2003, she knew that defendant Jared Kirby's alleged statements concerning Terry's character and financial condition, upon which she allegedly based her decision to make the $325,000 loan, were untrue.

In response, plaintiff asserted that her former husband, not she, submitted the proof of claim in the bankruptcy proceeding and that it is, therefore, disputed whether she had any notice of TMC's bankruptcy filing. Plaintiff also assert that defendants have not shown how or when the bankruptcy court determined TMC's assets were insufficient to allow it to repay the $325,000. Likewise, plaintiff also testified that in 2003, she was still trying to learn more about what had happened to her money and TMC and that this does not reflect that she knew she had a cause of action against defendants at that time.

The Court initially held that there was a genuine issue of fact as to when plaintiff had sufficient facts to lead to the discovery of the fraud of Terry and the insolvency of TMC, as well as when the damage actually occurred. However, after the discussion regarding the facts of this case at the hearing held in Birmingham on April 8, 2012, the Court reviewed the evidence in this case, in particular the

deposition testimony of Mrs. Davis-Robinson. After this review and consideration of the applicable law regarding the statute of limitations in fraud cases, the Court has concluded that its original decision was incorrect.

In her deposition testimony, plaintiff stated, in pertinent part:

Q. (by Mr. Gaines): Now, my understanding of your lawsuit, and we can look at the complaint, is that you're claiming that you lost $325,000 because Mr. Kirby induced you or relied on him to loan Mr. Terry money, correct?

A. (by Mrs. Davis-Robinson): No.

Q. So what made you loan Mr. Terry the $325,000?

A. The $325,000, as I understood it, was going to be repaid immediately. That was capital to keep the company doing things that they had to do until the USDA contract came through as well as a contract from I believe the Department of Forestry and the Department of Defense.

(Plaintiff Depo. at 127).

Plaintiff later testified that Jared Kirby "certainly influenced [her] indirectly" to make the $325,000 loan to TMC and that she and Mr. Kirby talked about the $325,000 "only in the sense that Mr. Kirby and First Bank had maintained the money for Terry Manufacturing over a period of more than 30 years when his father owned the company." (*Id*. at 129). However, this testimony directly contradicts her earlier

unequivocal statement that she did not make the $325,000 loan based on anything that Mr. Kirby said.

Her agreement with Mr. Terry required that he repay the $325,000 loan within 90 days. (*Id.* at 129). He failed to do so although he sent her an interest payment. (*Id.* at 131-32). Terry's excuse for not immediately repaying the loan was that he had not gotten the $8.5 million dollar loan he was waiting for from the USDA.

Plaintiff further testified that she became concerned that she would not be repaid in June 2003 when TMC filed for bankruptcy. (*Id.* at 137). Thereafter, plaintiff attended some of the bankruptcy court proceedings. At one such hearing, she learned that the FBI was investigating Terry for criminal fraud. Mrs. Davis-Robinson testified that she was contacted by an FBI agent and spoke to him about her dealings with Terry in August or September of 2003. (*Id.* at 139-42).

Mrs. Davis-Robinson attended one bankruptcy court hearing on July 26, 2003, about which she stated:

> There was one lawyer speaking, I think he was a lawyer, and he was saying that this was the worst bankruptcy case that they had seen. It's the biggest one in the state of Alabama. More that $254 million was missing from several investors or lenders. It was bad.

(*Id.* at 143). When she was questioned further about this, the following exchange occurred:

>Q. Now, when you found out that he was being investigated for criminal activity in July 2003, did you at that time suspect that he had not been as represented by Mr. Kirby and others?
>
>A. I came to that conclusion when he filed for bankruptcy.

(*Id.* at 143-44).

>Q. You knew at that time he was not a reputable businessman?
>
>A. Uh-huh.
>
>Q. You knew that he was a crook?
>
>A. Uh-huh.
>
>Q. And you knew that you had been lied to?
>
>A. Yes.

(*Id.* at 144).

The time of discovery of a fraud claim is the time when the party actually discovered the fraud or had facts that, **upon closer examination, would have led to the discovery of the fraud.** *Gray v. Liberty Nat. Life Ins. Co.*, 623 So.2d 1156, 1159 (Ala. 1993) (emphasis added).

The deposition testimony above reflects that Mrs. Davis-Robinson had plenty of facts at her disposal in July 2003 to conclude that she had been defrauded. This is true even if her testimony could be taken to establish that she actually relied on any statements by Jared Kirby about TMC in making the $325,000 loan to TMC. She

knew that she had an agreement with Mr. Terry entered into in September 2001 to repay her the $325,000 loan within 90 days. He failed to do so and had only made one interest payment to her shortly after the first time period had elapsed. She also knew that he was involved in a large bankruptcy characterized as one wherein $254 million was missing from several investors and lenders. By her own testimony, she was aware by that time that he was "a crook" and that she had been lied to. After reviewing the testimony above, the Court concludes that plaintiff was aware of facts in July 2003 which, upon closer examination, would have led to the discovery of the fraud by Mr. Terry.

Likewise, although a breach of duty does not produce a cause of action until the breach proximately results in injury, *Ramey v. Guyton*, 394 So.2d 2 (Ala. 1980), the Court further concludes that injury was apparent in July 2003 when TMC declared bankruptcy with losses in the amount of approximately $254 million. Inasmuch as plaintiff was an unsecured creditor owed $325,000 in a bankruptcy with losses of such a large amount, it was clear to any reasonable person that her $325,000 was lost forever.

Consequently, the Court AMENDS its earlier Memorandum Opinion in this case and finds that plaintiff's claims for damages resulting from the $325,000 loan

by Mrs. Davis-Robinson to Terry are barred by the statute of limitations.[1] Therefore, it is ORDERED that defendant's motion for summary judgment as to all claims asserted by plaintiff arising from this transaction is due to be and hereby is GRANTED.[2] However, the Court stands by its earlier ruling that no damages occurred regarding the $425,000 certificate of deposit held by First Bank until the certificate was cashed and the proceeds were not returned to plaintiff. Therefore, the motion for summary judgment as to plaintiff's claims regarding the $425,000 certificate of deposit is and remains DENIED.

DONE this 11th day of April, 2012.

_[signature]_
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE

---

[1] This includes any claim for fraud with respect to the $325,000 loan (Count Five), breach of fiduciary duty with respect to the $325,000 loan (Count Six), negligence with respect to the $325,000 loan (Count Seven), negligent misrepresentation with respect to the $325,000 loan (Count Eight), and fraudulent misrepresentation with respect to the $325,000 loan (Count Ten).

[2] The Court notes that plaintiff's second amended complaint actually makes allegations only with respect to the $425,000 certificate of deposit. Nowhere in the second amended complaint is there any mention of the $325,000 loan by plaintiff to TMC. However, the parties conducted discovery and made arguments in the summary judgment phase with respect to the $325,000 loan and included their positions on plaintiff's claims as to the $325,000 loan in their proposed pretrial order. Therefore, the Court considers the complaint to be amended in accordance with Rule 15(b)(2), Fed.R.Civ.P.